UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| STEVEN BRIAN PURCHASE,<br><br>                Plaintiff,<br><br>      vs.<br><br>STURGIS POLICE DEPARTMENT,<br>OFFICER WADE A. DUETER,<br>OFFICER NICHOLE HODGE,<br>CO BRENGLE,<br><br>                Defendants. | CIV. 13-5060-JLV<br><br><br>ORDER |

**INTRODUCTION**

Plaintiff Steven Purchase brings an action under 42 U.S.C § 1983
alleging the defendants (the Sturgis Police Department, Officer Wade Dueter
("Dueter"), Officer Nichole Hodge ("Hodge") and Corrections Officer Matt
Brengle ("Brengle") violated several of his constitutional rights.   (Docket 4 at
p. 1).   Although not explicitly referenced in his amended complaint, Mr.
Purchase asserts the court, by virtue of his § 1983 claim, has supplemental
jurisdiction over the remainder of his claims which would otherwise sound in
state law.   See 28 U.S.C. § 1367.   Mr. Purchase seeks $200,000 for "pain
and injury and visual scars on his leg and for [his] mental anguish."   (Docket
4 at p. 4).   Mr. Purchase seeks punitive damages from the defendants.   Id.

The defendants deny the allegations contained in Mr. Purchase's amended complaint.   (Docket 10).

Defendants Sturgis Police Department, Dueter and Hodge filed a motion for summary judgment and a statement of undisputed material facts. (Dockets 47 & 49).   Defendant Brengle filed a motion for summary judgment and a statement of undisputed material facts.   (Dockets 54 & 56).   Mr. Purchase filed a combined response to all of the defendants' statements of undisputed material facts.   (Docket 64).   Mr. Purchase filed a combined response to all of the defendants' motions for summary judgment.   (Docket 65).   Defendants Sturgis Police Department, Deuter and Hodge filed a brief in reply to Mr. Purchase's response.   (Docket 67).   Defendant Brengle filed a brief in reply to Mr. Purchase's response.   (Docket 66).

Mr. Purchase made many non-dispositive motions and assorted filings in this case:   a motion for jury excursion (Docket 15); a motion to exclude uniforms and weapons from the courtroom (Docket 16); a motion *in limine* regarding uniform traffic tickets K454806 and K454807 and arrest record (Docket 17); a motion *in limine* regarding lay opinions about mental health (Docket 22); a motion to allow evidence of insurance for purposes of punitive damages, bias, prejudice, agency and motive (Docket 23); a first set of proposed jury instructions (Docket 30); a motion *in limine* to prevent introduction of evidence of officers' subjective thoughts and hearsay audios (Docket 31); a motion *in limine* to prevent introduction of witnesses' or parties'

2

pre-occurrence or post-occurrence drug or alcohol consumption (Docket 32);

a motion for special interrogatory questions to the jury (Docket 33); a motion

for rulings regarding Fed. R. Evid. 404 and 608 and other matters (Docket

34); a submission of jury polling questions regarding bias to South Dakota

alcohol laws (Docket 37); a motion to exclude Meade County residents from

the jury pool (Docket 42); a motion for the court to view video and audio files

that were submitted to the court (Dockets 59), which was unopposed by

defendants Sturgis Police Department, Deuter and Hodge (Docket 61); and a

motion to compel disclosure (Docket 60).   Because the court's resolution of

the pending motions for summary judgment will resolve Mr. Purchase's

non-dispositive motions, the court first addresses defendants' motions for

summary judgment.

## FACTS

   The parties' briefing in this case necessitates a review of the court's local

rules and the Federal Rules of Civil Procedure regarding motions for summary

judgment.   District of South Dakota LR 56.1 requires that a nonmoving party

opposing a motion for summary judgment "*will respond to each numbered*

*paragraph in the moving party's statement of material facts with a separately*

*numbered response and appropriate citations to the record* . . . [and] will identify

any material facts as to which it is contended that there exists a genuine material

issue to be tried."   D.S.D. LR 56.1(B) (emphasis added).   The court will deem as

admitted "[a]ll material facts set forth in the movant's statement of material facts

. . . unless controverted by the opposing party's statement of material facts."
D.S.D. LR 56.1(D).

Rule 56 "permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred."   Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).   Rule 56(c) provides that:

1.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

    (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

    (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

In this case, Mr. Purchase failed to respond to the defendants' statements of undisputed material facts in accordance with D.S.D. LR 56.1(B).   Mr. Purchase's response admits it is "an incomplete list of [108] disputed facts taken from requests for admission, and the defendants' statements of undisputed facts, and other sources."   (Docket 64).   The court agrees.   Plaintiff's response to defendants' statements of undisputed material facts is a list of 108 separate facts, allegations and theories the plaintiff believes that a jury could "reasonably find" in this case.   Id. at 4.

4

This does not meet the standard for a nonmoving party as required by the Federal Rules of Civil Procedure and the court's local rules.   First, Mr. Purchase's response is devoid of any citations to the record.   See id. 64. Second, although Mr. Purchase's "response" to defendants' statements of undisputed material facts contains separately numbered paragraphs, the numbered paragraphs are not properly characterized as a corresponding response to each of the defendants' asserted statements of undisputed material facts.   The "response" is a list of what Mr. Purchase believes the jury might find. The court cannot overlook these deficiencies.   Because Mr. Purchase failed to properly respond, the court considers the facts contained in defendants' statements of undisputed material facts (Dockets 49 & 56) as admitted for purposes of adjudicating the defendants' motions for summary judgment.   Fed. R. Civ. P. 56(e)(2); D.S.D. LR 56.1(D).   A brief description of the material facts follows.

Mr. Purchase arrived in Sturgis, South Dakota, on the afternoon of July 10, 2013.   See Docket 52 at p. 12 (Purchase Deposition).[1]   Mr. Purchase traveled to Sturgis to attend a July 11, 2013, court proceeding for a "[v]iolation of a protection order with [his] ex-wife."   Id.   During the afternoon of July 10, Mr. Purchase bought a 750 milliliter bottle of vodka and began drinking it.   Id. at 13-14.   By the evening of July 10, Mr. Purchase was intoxicated and his

---

[1]The court's citations to docket entries containing Mr. Purchase's deposition transcripts (Dockets 52 & 58) reference specific pages of the deposition transcripts.   All other citations to the parties' filings reference the document's page number in CM/ECF.

memory got worse as the day progressed.   Id. at 16.   Mr. Purchase went to the house of a person later identified as Darrin Marsh.   Id. at 15; see also Track 1 of the Submitted Audio Files.[2]   In the early morning hours of July 11, 2013, Mr. Marsh called the City of Sturgis Police Department dispatcher complaining that an unidentified person, who was later identified as Mr. Purchase, was "drunk and wanted to fight and then he went banging on people's doors wanting to fight."   (Track 1 of the Submitted Audio Files, 0:21-0:24); see also Dockets 50 at p. 1; 51 at p.1.

Mr. Marsh made several more calls to the Sturgis police dispatcher during the early morning hours of July 11 describing Mr. Purchase's physical appearance, where he believed Mr. Purchase could be located, that Mr. Purchase was drunk, and further describing Mr. Purchase's threatening and violent behavior toward himself and others.   See Tracks 1-4 of the Submitted Audio Files; see also Dockets 50 pp. 1-2; 51 pp. 1-2.   The dispatcher relayed much of this information to on-duty Sturgis police officers via the police radio.   See Track 1 of the Submitted Audio Files.   Officers Nicole Hodge and Wade Deuter responded to the dispatcher's radio communication.   (Dockets 50 at p. 1; 51 at p.1).   Prior to encountering Mr. Purchase, the officers were "aware through radio traffic and the police dispatcher that a citizen had complained about a male who had acted in a threatening and violent manner, who was knocking on doors of

---

[2]In order to properly understand the circumstances surrounding Mr. Purchase's complaint, the court found it necessary to review the submitted video and audio files.   Accordingly, plaintiff's motion (Docket 59) is granted.

others in his neighborhood and threatening the caller and other people."[3] (Dockets 50 at p. 1; 51 at p. 1).

Deuter first located Mr. Purchase at approximately 1:45 a.m. on July 11. (Docket 50 at p. 2).   Prior to approaching Mr. Purchase, Deuter was unaware whether Mr. Purchase possessed any weapons.[4]  Id.  Mr. Purchase was sitting on what appears to be either a log or a railroad tie in the Pizza Hit parking lot. (First Submitted Video, 0:09); see also Docket 50 at p. 2.   Deuter approached Mr. Purchase and threw Mr. Purchase's vodka bottle away.   (Docket 52 at p. 26) (Purchase Deposition).   At 1:54 a.m., shortly after Hodge's arrival, Deuter and Mr. Purchase stood approximately arm's length apart when Mr. Purchase attempted to stand up.   (First Submitted Video, 0:23).   Immediately after Mr. Purchase stood up, Officer Deuter pushed Mr. Purchase's shoulders, causing Mr. Purchase to trip over the log and fall to the ground.   Id. at 0:26; see also Docket 52 at p. 23 (Purchase Deposition); (Docket 50 p. 2).   Once on the ground,

---

[3]Mr. Purchase disputes, without providing any citation to the record, that Hodge and Deuter were aware of the information Mr. Marsh gave to the police dispatcher.   (Docket 64 at p. 1).   Without any citation to the record to refute the officer's affidavits (Dockets 50 & 51), Mr. Purchase's allegations do not create a genuine dispute of material fact.   Further, in track one of the Submitted Audio Files, the listener can hear the police dispatcher relaying Mr. Marsh's information to officers over the police radio.

[4]Mr. Purchase asserts that "Deuter was well aware that Steven Purchase was not in possession of a weapon."   (Docket 64 at p. 5).   Mr. Purchase provides no citation to the record in support of his allegation.   Mr. Purchase's allegation, without more, does not create a genuine dispute of material fact in the face of Deuter's affidavit.   Further, in reviewing the submitted audio and video files, the court did not hear the dispatcher advise officers that Mr. Purchase was *not* in possession of a weapon.

the officers handcuffed Mr. Purchase and searched him for weapons.   (First Submitted Video, 0:40); see also Docket 50 at p. 2.

The video provided to the court does not contain any audio through the first minute of the recording.   See First Submitted Video, 1:00.   Therefore, the court is unable to hear any conversation between Mr. Purchase and officers that occurred prior to Mr. Purchase's attempt to stand up and his ultimate arrest. After that point, Mr. Purchase was extremely verbally abusive and threatening to the officers.   See First and Second Submitted Videos; see also Docket 51 at p. 2. Mr. Purchase told at least one of the officers that he *could* kill them and that he *could* kick their a**.[5]   (Docket 52 at p. 24-26); see also First Submitted Video, 4:13 (Mr. Purchase tells Deuter that "I'll f*** you up").   Mr. Purchase's verbally abusive language continued through his arrest and transportation to the Meade County jail.   See First and Second Submitted Videos; see also Docket 52 at p. 37 (Mr. Purchase stated that he "was basically, verbally assaulting [the officers]."); Id. at 40 (Mr. Purchase stated that "on the way to jail [he] continued to verbally abuse the officer.")

After Mr. Purchase was handcuffed, he refused to get to his feet and forced the officers to carry him part of the way to their patrol car.   (Docket 52 at pp. 29-30) (Purchase Deposition).   Once at the patrol car, Mr. Purchase "sat in voluntarily, but did not put [his] right leg in the vehicle."   Id. at 30.   The officers

_____

[5]Mr. Purchase asserts that his use of the conditional verb "could" transforms his violent threats into benign statements.   The court does not embrace that distinction.

8

asked Mr. Purchase to put his leg in the vehicle several times.   (First Submitted Video, 3:00-4:48); <u>see</u> <u>also</u> Docket 52 at pp. 30-32, 35 (Purchase Deposition). Mr. Purchase refused to comply with the officers' directives because he was "angry."  (Docket 52 at p. 31).   Mr. Purchase admitted he did not expect the officers to drive the patrol car with his right leg hanging out of the car.   <u>Id.</u>

Mr. Purchase was warned at least four times by the officers that if he refused to get in the patrol car, he would be tased.   (First Submitted Video, 3:00-4:30); <u>see</u> <u>also</u> Dockets 50 at p. 2; 51 at p. 2; 52 pp. 30-32, 35 (Purchase Deposition).   After Mr. Purchase refused to comply with the officers' directives, Deuter used Hodge's taser "to drive stun Mr. Purchase in his right leg [lower thigh] for less than 5 seconds."  (Docket 50 at p. 2).   Officer Deuter utilized a "drive stun" setting when tasering Mr. Purchase.   <u>Id.</u> at p. 10.   The "drive stun" setting is the lowest setting on the taser.   (Docket 49 at p. 4).   The Sturgis Police Department's policy regarding the use of tasers states, "[i]n cases where the subject is actively resisting an officer's attempt to take them into custody but not threatening the officer with an assault[,] it is recommended that the [taser] be used in the 'push [drive] stun mode.' "  (Docket 50 at p. 5).   Mr. Purchase was handcuffed at the time Officer Deuter tased him.[6]   After being tased once, Mr.

---

[6]Although information regarding whether Mr. Purchase was handcuffed at the time he was tased is absent from Dueter's and Hodge's affidavits, the court's review of the record confirms that this was the case.   At 42 seconds into the First Submitted Video, the viewer can see Mr. Purchase being placed in handcuffs.   Brengle states that Mr. Purchase was handcuffed with his hands behind his back when he arrived at   the Meade County jail.   (Docket 56 at ¶ 5). Lastly, neither Hodge's nor Deuter's affidavit reference an intervening time when Mr. Purchase was free of the handcuffs.

Purchase got into the patrol car and rode with Deuter to the Meade County jail. (Docket 52 at p. 40); see also First Submitted Video, at 4:30.

Mr. Purchase arrived at the jail at approximately 2:07 a.m. on July 11. (Docket 57-2).   Brengle described Mr. Purchase as "very verbally abusive and threatening towards the officers."[7]   Id.   In his deposition, Mr. Purchase admits his "verbal abuse continued in all directions" while at the jail, and he refused to be quiet when officers told him to do so.   (Docket 52 at p. 41).   Mr. Purchase further stated he would not characterize his interactions with officers as conversations, but rather as him insulting them.   Id.

Due to Mr. Purchase's verbal abuse and threats, the staff at the Meade County jail decided for officer safety reasons to leave him in handcuffs and placed him in the restraint chair, with his hands behind his back.   (Docket 57-2).   Brengle secured all of the chair's restraint mechanisms except the arm straps.   Id.   After Mr. Purchase was secure in the chair, Brengle and officers Deuter and Hodge attempted to remove Mr. Purchase's handcuffs.   Mr. Purchase refused to cooperate by interlocking his fingers.   Id.   Unable to

---

[7]Mr. Purchase claims he was shouting because the strap on the restraint chair caused him pain, he needed to use the restroom, and because he was trying to convince the officers that he was not a threat to himself or others. (Docket 58-1 at pp. 78-79) (Purchase Deposition).

remove the handcuffs, Mr. Purchase was placed in a cell still strapped into the chair and handcuffed.[8]   Id.

At approximately 2:35 a.m., Brengle and Corrections Officer Mowell checked Mr. Purchase's circulation and Mr. Purchase appeared to be fine.   Id. The corrections officers attempted to remove Mr. Purchase's handcuffs and strap his arms into the chair correctly.   Id.   However, Mr. Purchase again locked his hands and refused to cooperate, so Mr. Purchase remained handcuffed. (Docket 57-2).

At approximately 3:10 a.m., Brengle and Mowell gave Mr. Purchase a drink of water because Mr. Purchase had been screaming for water.   Id.   Brengle again checked Mr. Purchase's circulation and determined it was fine.   Id.   Mr. Purchase was "still very agitated and threatening" at this time so Brengle advised him that he needed to calm down before he would be released from the restraint chair.   Id.

At approximately 3:19 a.m., Deuter and Hodge assisted Brengle in removing Mr. Purchase's handcuffs.   Id.   After Mr. Purchase's handcuffs were removed his hands were positioned in the restraint chair properly.   Id. Because Mr. Purchase was "still very verbally threatening" the officers decided Mr. Purchase should remain in the restraint chair until his attitude improved.

---

[8]For his part, Mr. Purchase does not believe he was handcuffed while in the restraint chair (Docket 58-1 at p. 79) (Purchase Deposition); he does not believe he resisted while the officers tried to remove the handcuffs, Id. at 63-64; and he does not remember the officers coming back to check his circulation and to try to remove the handcuffs.   Id. at 64, 79-80.

(Docket 57-2).   Brengle checked Mr. Purchase's circulation and found it acceptable.   Id.

At 4:29 a.m., Brengle again checked Mr. Purchase's circulation.   Id.   Mr. Purchase was "still very verbally abusive," so Brengle decided to keep Mr. Purchase in the chair.   Id.   At 5 a.m. Bernie Tveidt, a supervisor at the Meade County jail, reported to work and was in charge.   (Docket 57 p. 3).   Brengle ended his shift at 5:30 a.m.   Id.   At this point, Brengle's interaction with Mr. Purchase ended and Mr. Purchase was left in the care of other corrections officers.   Id.

Mr. Purchase was in the restraint chair for approximately seven hours. (Docket 58-1 at p. 64) (Purchase Deposition).   Mr. Purchase was either asleep or passed out for approximately three hours while in the restraint chair.   Id. at 63. Mr. Purchase appears to have been released from the restraint chair at approximately 9 a.m.   See Dockets 58-1 at p. 64; 56 at p. 1.   Although Mr. Purchase's time in the restraint chair at the Meade County jail was recorded on videotape, jail staff deleted the videotape one or two months after the referenced acts as part of the normal recordkeeping protocol.   (Docket 57 at pp. 3-4).

As a result of being tased, Mr. Purchase sustained two red scabs approximately one-quarter inch wide which were visible for approximately two weeks.   (Dockets 49 at p. 4; 52 at pp. 58-59).   Mr. Purchase did not receive medical treatment for the taser marks.   (Docket 52 at p. 59).   Mr. Purchase

alleges he suffered psychological injury in the form of an increased distrust of authority arising from his arrest and detention.   Id. at 60.

As a result of the incidents in the early morning hours of July 11, 2013, Mr. Purchase was charged with and pled guilty to resisting arrest and disorderly conduct in violation of SDCL §§ 22-11-4 and 22-18-35, respectively.   (Docket 52 at p. 3).   Judge Michelle Palmer-Percy sentenced Mr. Purchase to 90 days in jail with 80 days suspended on the resisting arrest charge and 30 days in jail with 20 days suspended on the disorderly conduct charge, with the sentences to run concurrently.   Id. at 4; see also Docket 52 at p 49-50 (Purchase Deposition). Mr. Purchase did not appeal the convictions.   (Docket 52 at p. 50).   The convictions have not been set aside and Mr. Purchase has not been pardoned. Id.

Further recitation of salient facts is included in the discussion section of this order.

## DISCUSSION

For purposes of judicial economy, the court considers all of the defendants' motions for summary judgment together.   See Dockets 47 & 54.

## 1.   Standard Applicable to Summary Judgment Motions

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The court must view the facts, and inferences from those

facts, in the light most favorable to the nonmoving party.   See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Helton v. Southland Racing Corp., 600 F.3d 954, 957 (8th Cir. 2010) (per curiam).   Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.   See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994).

The burden is on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).   Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.   See Anderson, 477 U.S. at 256; Fed. R. Civ. P. 56(e) (each party must support its own assertions of fact and address the opposing party's assertions of fact as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment.   Anderson, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.   Factual disputes that are irrelevant or unnecessary will not be counted."   Id. (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2725, at 93-95 (3d ed. 1983)).   "[T]he mere existence of some alleged

14

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

Essentially, the availability of summary judgment turns on whether a jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

## 2. Mr. Purchase's Claims

Mr. Purchase's amended complaint alleges the following:

> This is a 42 U.S.C. 1983 action for violation of civil rights under color of state law. The violations of civil rights occurred in Sturgis, South Dakota on or about 11 July 2013 at approximately 1:50am [sic] and thereafter, and are reportedly on video. The incidents violate several Constitutional rights including but not limited to due process rights under the 5th and 14th amendments and other rights involving punishment before trial under the 6th amendment, false imprisonment, assault and battery and cruel and unusual punishment under the 8th amendment, as well as search and seizure rights under the 4th amendment. Also Steven's [sic] alleges negligent and intentional infliction of emotional distress.

(Docket 4 at p. 1).

For purposes of analysis, the court interprets Mr. Purchase as having pled the following claims in his § 1983 action: a due process claim under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution; a false arrest and false imprisonment claim under the Fourth Amendment; an excessive

15

force claim under the Fourth Amendment's proscription against illegal searches and seizures; a claim under the Eighth Amendment's prohibition of cruel and unusual punishment; and of assault and battery, intentional infliction of emotional distress and negligent infliction of emotional distress in violation of South Dakota state law.   Each claim is addressed in turn.

### A.   Mr. Purchase's Fifth, Sixth and Fourteenth Amendment and False Imprisonment Claims

At the outset, the court notes that the "Fifth Amendment's Due Process Clause applies only to the actions of the federal government." Doe v. Trumbull Cnty. Children Servs. Bd., No. 4:13CV00768, 2013 WL 6903777, at *3 (N.D. Ohio Dec. 31, 2013).   "The Due Process Clause of the Fourteenth Amendment, on the other hand, 'restricts the activities of the states and their instrumentalities. . . .' " Id. (internal quotation marks and citations omitted).   "Rights guaranteed by the Fifth Amendment are not incorporated into the Fourteenth where . . . such rights, if they exist, can be asserted directly under the Fourteenth Amendment." Id. (internal quotation marks and citations omitted).   The Fourteenth Amendment's Due Process Clause provides, in pertinent part: "[N]or shall any state deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.   Plaintiff's Fifth Amendment Due Process Claim is really a claim under the Fourteenth Amendment.

Similarly, to the extent Mr. Purchase pled a violation of his Sixth Amendment rights, many of these rights have been incorporated into the

Fourteenth Amendment and applied to the states.   <u>See, e.g.</u>, <u>Duncan v. State of La.</u>, 391 U.S. 145, 148 (1968) (collecting cases documenting several of the rights protected by the Sixth Amendment which have been incorporated into the Fourteenth Amendment's Due Process Clause).

Although Mr. Purchase failed to identify the specific manner in which his Sixth Amendment rights were violated, because all of the defendants in this case are state of South Dakota actors, the court considers Mr. Purchase's Sixth Amendment claim under the Fourteenth Amendment.   The court presumes the same for all of Mr. Purchase's claims alleged under the Fourth Amendment.   <u>See City of Ontario, Cal. v. Quon</u>, 560 U.S. 746, 750 (2010).

Mr. Purchase asserts his arrest and pretrial detention constitute a violation of his due process rights as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.   (Docket 4 at p. 1). Mr. Purchase further alleges he was falsely imprisoned in violation of the Eighth Amendment of the United States Constitution.   <u>Id.</u>   The court interprets Mr. Purchase's false imprisonment allegation to also include a false arrest allegation. <u>See</u> <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter.").   Notably, Mr. Purchase's false arrest/false imprisonment claims fall under the Fourth rather than the Eighth Amendment of the United States Constitution.   <u>Hall v. Phillips</u>, No. CIV. 05-4043, 2006 WL 2221494, at *3 (W.D. Ark. Aug. 2, 2006)

17

("[A]llegations of false arrest and false imprisonment sound in the Fourth Amendment.").

Although Mr. Purchase's specific allegations are unclear, he seems to assert he was not arrested with probable cause or other acts were committed against him during the course of his encounter with Deuter and Hodge which created a false arrest, ultimately resulting in his false imprisonment.   See Dockets 65 at pp. 3-4; 64 at pp. 4-5 (among others).   Mr. Purchase's claims are properly analyzed under the doctrine set forth in Heck v. Humphrey, 512 U.S. 477 (1994).   The Supreme Court's holding in Heck is well established:

> [T]he hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement . . . .
>
> [I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.   A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.   Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 486-87 (1994); see also Widvey v. Mink, No. CIV. 09-5044-JLV, 2010 WL 276185, at *10 (D.S.D. Jan. 15, 2010) ("[The Heck doctrine] avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.") (internal quotation marks and citations omitted); Anderson v. Franklin Cnty., Mo., 192 F.3d 1125, 1131 (8th Cir. 1999); Goings v. Chickasaw Cnty., IA, 523 F. Supp. 2d 892, 914-15 (N.D. Iowa 2007).

In Mr. Purchase's case, he does not dispute his convictions for resisting arrest and disorderly conduct were never appealed or set aside and he has never been pardoned.   (Docket 52 at p 50) (Purchase Deposition).   Mr. Purchase also failed to adduce any evidence indicating his convictions were declared invalid by a state tribunal or were called into question by a federal court.   The court's adjudication of Mr. Purchase's due process claims as well as his Fourth Amendment false arrest and imprisonment claims would necessarily cause it to reconsider the validity of his arrest and confinement, as well as his underlying criminal convictions which have not been invalidated.   Furthermore, Mr. Purchase failed to articulate how his due process, false arrest and imprisonment claims would not imply the invalidity of his conviction or sentence.   Dolney v. Lahammer, 70 F. Supp. 2d 1038, 1040 (D.S.D. 1999).

19

The court will not re-adjudicate Mr. Purchase's arrest, confinement and underlying criminal conviction.   The court grants defendants' motions for summary judgment on Mr. Purchase's due process claims under the Fifth, Sixth and Fourteenth Amendments as well as his false arrest and imprisonment claims under the Fourth Amendment.

This ruling does not affect Mr. Purchase's excessive force claim.   <u>Goings</u>, 523 F. Supp. 2d at 915 (finding an excessive force claim does not fall within the <u>Heck</u> doctrine because the question of the degree of force used by a police officer is analytically distinct from whether the plaintiff violated the law).

### B.   Mr. Purchase's Fourth Amendment Excessive Force Claim

Although Mr. Purchase does not explicitly reference an excessive force claim in his amended complaint, he references the Fourth and Eighth Amendments, both of which could give rise to excessive force claims.   With regard to Deuter and Hodge, the court interprets Mr. Purchase as having brought his excessive force claim under the Fourth Amendment.   <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989) ("[T]he excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right to be secure in their persons . . . against unreasonable . . . seizures" of the person.) (internal quotation marks and citations omitted).

In light of the facts of the case, the court finds Mr. Purchase's Fourth Amendment excessive force claim lies only against the Sturgis Police

20

Department, Deuter and Hodge,[9] in their individual and official capacities, namely for pushing him to the ground and tasing him.   The court first addresses Mr. Purchase's excessive force claim against Deuter and Hodge in their individual capacity.

### i.      Claims Against Deuter and Hodge in Their Individual Capacity

Central to the court's determination of Mr. Purchase's excessive force claim is whether Deuter and Hodge are shielded from liability under the doctrine of qualified immunity.   "Qualified immunity shields police officers from liability for civil damages where 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "   Wertish v. Krueger, 433 F.3d 1062, 1066 (8th Cir. 2006) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).   "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."   Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks and citations omitted).   "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law."

---

[9]Mr. Purchase has not alleged any facts indicating that Brengle had anything to do with Deuter and Hodge prior to Mr. Purchase's arrival at the Meade County jail.   Therefore, the court construes Mr. Purchase's Fourth Amendment excessive force claim as only having been brought against Deuter, Hodge and the Sturgis Police Department.

Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (internal quotation marks and citations omitted).

"An official is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the plaintiff, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation."   Loch v. City of Litchfield, 689 F.3d 961, 965 (8th Cir. 2012) (citing Pearson, 555 U.S. at 232).   "The reasonableness of a use of force turns on whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his subjective intent or motivation."   Id. (citation omitted).

Courts are instructed to "consider the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively fleeing or resisting arrest."   Id. (citations omitted).   Finally, the reasonableness of an officer's use of force is judged " 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' " Id. (quoting Graham, 490 U.S. at 396); see also Graham, 490 U.S. at 396 ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").

In this case, Deuter first encountered Mr. Purchase at approximately 1:45 a.m. on July 11.   Mr. Purchase was sitting alone on a log in an empty Pizza Hut parking lot.   Mr. Purchase was intoxicated and a vodka bottle was present.   The

22

police dispatcher informed Deuter and Hodge of a citizen's complaint that a person matching Mr. Purchase's physical appearance was drunk and wanted to fight and was also banging on the doors of unrelated people looking to fight.   The officers were unaware whether Mr. Purchase was in possession of a weapon. Deuter pushed Mr. Purchase down as soon as he stood up and Deuter handcuffed him.   Although Mr. Purchase alleges negligent infliction of emotional distress resulting in an increased distrust of authority, he sustained no physical injuries by being pushed to the ground.

The court finds Deuter's conduct was objectively reasonable and not excessive in light of all the circumstances facing him at the time.   Although Deuter's actions in pushing Mr. Purchase to the ground appear on video as aggressive, the court will not second guess the decisions of a police officer made when confronting a drunk and reportedly violent person in an empty parking lot late at night with only one other officer present.   The court finds Deuter and Hodge did not violate any constitutionally protected right of Mr. Purchase when arresting and handcuffing him.

With regard to Deuter's tasing of Mr. Purchase, the court notes although Mr. Purchase was handcuffed, he refused to sit in the patrol car by keeping his right leg on the ground.   Mr. Purchase repeatedly threatened Deuter and Hodge, including threats that he could kill them.   Mr. Purchase was highly verbally abusive to the officers.   The officers warned Mr. Purchase on four occasions that if he did not get into the car he would be tased.   Deuter set the taser to "drive

23

stun," the lowest setting, and tased Mr. Purchase for only five seconds.   The injuries Mr. Purchase sustained as a result of the tasing were merely two one-quarter inch scabs which vanished approximately two weeks later.

The court recognizes being tased, no matter the duration or intensity level, is an unpleasant experience, but in these particular circumstances the officers acted in an objectively reasonable fashion in securing Mr. Purchase's compliance during a highly charged situation.   See Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) (holding the use of a taser to be reasonable and not excessive); Imp v. Wallace, No. CIV. 10-509(DSD/JJK), 2011 WL 4396941, at *5 (D. Minn. Sept. 21, 2011) (The court found the officers' use of a taser in drive-stun mode to be objectively reasonable where the arrestee "positioned his body to prevent being placed in the vehicle."   The court went on to note that "[a]s a result, the force required to strong-arm [the arrestee's] body into the squad vehicle against his will would have necessarily risked injury to [the arrestee] and the Deputies."); Wommack v. Brown, No. 4:11CV1487SNLJ, 2012 WL 5948922, at *13 (E.D. Mo. Nov. 28, 2012) ("Where a person is physically resistant and non-compliant with the orders of a law enforcement officer, the use of a Taser has been found to be objectively reasonable.").

Deuter's tasing of Mr. Purchase avoided further risk of injury to Mr. Purchase, Deuter and Hodge by obviating the officers' need to strong-arm Mr. Purchase into the patrol car.   The officers' actions in tasing Mr. Purchase did not constitute excessive force, and Mr. Purchase's constitutional rights were not

24

violated.   Under the circumstances, the actions of Deuter and Hodge were objectively reasonable in securing Mr. Purchase's entry into the patrol car.

Applying the second test for an exception to the qualified immunity doctrine, the court finds Deuter and Hodge did not violate any clearly established constitutional right of Mr. Purchase when arresting and transporting him. Loch, 689 F.3d at 965.   "[T]he salient question that the [court] ought to . . . ask[] is whether the state of the law . . . gave respondents fair warning that their alleged treatment . . . was unconstitutional."   Hope v. Pelzer, 536 U.S. 730, 741 (2002).   Mr. Purchase failed to identify any controlling authority in the Eighth Circuit or a consensus of persuasive authority which would have put a reasonable officer on notice that his or her actions were unlawful.   See Wilson v. Layne, 526 U.S. 603, 617 (1999).

There is no applicable exception to the qualified immunity doctrine in this case.   Deuter and Hodge, in their individual capacities, are shielded by qualified immunity from any civil claims Mr. Purchase might make stemming from the events which ultimately led to Mr. Purchase's arrival at the Meade County jail. Therefore, the court grants Deuter's and Hodge's motions for summary judgment on Mr. Purchase's Fourth Amendment excessive force claim against them in their individual capacities.   Because Mr. Purchase's Fourth Amendment excessive force claim does not implicate Brengle, he too is entitled to summary judgment on this claim.

### ii.    Claims Against the Sturgis Police Department and Deuter and Hodge in Their Official Capacities

"[A] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."   Parrish v. Ball, 594 F.3d 993, 997 (8th Cir. 2010) (quoting Elder–Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006)).   The Eighth Circuit determined law enforcement personnel are public officials.   Id. (determining a county sheriff to be a public official). However, police departments and county jails are not suable entities.   See Owens v. Scott Cnty. Jail, 328 F.3d 1026, 1027 (8th Cir. 2003) ("[C]ounty jails are not legal entities amenable to suit; De La Garza v. Kandiyohi Cnty. Jail, Corr. Inst., 18 F. App'x 436, 437 (8th Cir. 2001); Ketchum v. City of W. Memphis, Ark., 974 F.2d 81, 82 (8th Cir. 1992) (holding that a police department was not a "juridical entit[y] suable as such").[10]   On these grounds, the court grants Deuter's and Hodge's motions for summary judgment against Mr. Purchase's Fourth Amendment excessive force claim in their official capacities.

Although the Sturgis Police Department is included in the caption of Mr. Purchase's amended complaint, Mr. Purchase failed to articulate a distinct legal theory of liability against the Police Department.   Mr. Purchase also failed to

---

[10]Although the court found no case law specifically on point, South Dakota law also requires the municipality, in addition to the police department or county jail, to be a named in actions against a state law enforcement agency.   See, e.g., Hall v. City of Watertown ex rel. City of Watertown Police Dep't, 636 N.W.2d 686 (S.D. 2001) (noting that the City of Watertown was a named codefendant in the suit); Cromwell v. Rapid City Police Dep't, 632 N.W.2d 20 (S.D. 2001) (noting that the City of Rapid City was a named codefendant in the suit).

provide any factual allegations in his amended complaint or any facts, supported by specific citations to the record, in his response to the defendants' statements of undisputed material facts which would give rise to a separate claim against the Sturgis Police Department.   Any claim against the Sturgis Police Department would fail based on the cited authorities.

The court need not engage in analysis as to whether the Sturgis Police Department may be liable to Mr. Purchase under the doctrine set forth in Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 672 (1978).   Monell claims are properly brought before a municipality or local government.   Id. at 694.   The Sturgis Police Department is not a local government and Mr. Purchase failed name a municipality in his amended complaint.   The Sturgis Police Department's motion for summary judgment is granted against all of Mr. Purchase's claims brought under his § 1983 suit.

Mr. Purchase will not be given leave to refile his amended complaint naming other suable municipal entities because the court has determined no constitutional right of Mr. Purchase was violated by Deuter or Hodge in effecting Mr. Purchase's arrest and detention.   Although a district court should freely grant a party leave to amend a pleading when justice requires under Fed. R. Civ. P. 15(a), the court "may deny leave to amend where there is 'futility of the amendment.' " Magee v. Trustees of Hamline Univ., Minn., 747 F.3d 532, 536 (8th Cir. 2014) (quoting Moses.com Secs., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1065 (8th Cir. 2005)).   The court finds it would be futile for

27

Mr. Purchase to pursue a <u>Monell</u> claim alleging a municipality executed an unlawful policy or custom when the acts which gave rise to his complaint were found to be lawful.   <u>See</u> <u>Monell</u>, 436 U.S. at 694.   Furthermore, Mr. Purchase's motion to compel the disclosure of alleged <u>Monell</u> material (Docket 60) is denied as moot.

### C.    Mr. Purchase's Eighth Amendment Claim

At the outset, the court notes Mr. Purchase's Eighth Amendment claim, as a pretrial detainee in South Dakota state custody, is "analyzed under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment."   <u>Crow v. Montgomery</u>, 403 F.3d 598, 601 (8th Cir. 2005) (citing <u>Owens</u>, 328 F.3d at 1027).   This makes little practical difference because "[p]retrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." <u>Kahle v. Leonard</u>, 477 F.3d 544, 550 (8th Cir. 2007).

The court interprets Mr. Purchase's Eighth Amendment claim as arising out of his time spent in the restraint chair while he was a pretrial detainee at the Meade County jail during the early morning hours on July 11, 2013.   The court finds Mr. Purchase's Eighth Amendment claim was brought only against Brengle.   Although the court can find nowhere in Mr. Purchase's amended complaint (Docket 4) which would indicate Brengle is sued in his individual

28

capacity,[11] the court accepts Mr. Purchase's excuse for not having done so (Docket 65 at pp. 12-14) and will interpret Mr. Purchase as having brought suit against Brengle in both his individual and official capacities.

### i.   Claim Against Brengle in His Individual Capacity

The court analyzes Mr. Purchase's claim against Corrections Officer Brengle under the same two-step qualified immunity framework enumerated above: "[a]n official is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the plaintiff, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation."   Loch, 689 F.3d at 965 (citing Pearson, 555 U.S. at 232).

The court first addresses whether the evidence, when viewed in the light most favorable to Mr. Purchase, establishes a violation of his Eighth Amendment rights.   As an initial matter, the court must determine whether the conditions under which Mr. Purchase was held amounted to punishment.   Bell v. Wolfish, 441 U.S. 520, 535 (1979).   "[U]nder the Due Process Clause [of the Fourteenth Amendment], a detainee may not be punished prior to an adjudication of guilt." Id. (citations omitted).   However, "[n]ot every disability imposed during pretrial

---

[11]Generally, the Eighth Circuit requires a plaintiff attempting to sue a public official in his or her individual capacity to "expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."   Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999).

detention amounts to 'punishment' in the constitutional sense . . . ."  Id. at 537.
The Court reasoned that:

> [I]f a particular condition or restriction of pretrial detention *is reasonably related to a legitimate governmental objective*, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees . . . .

Id. at 539 (emphasis added).

The Eighth Circuit held the Eighth Amendment's proscription against cruel and unusual punishment protects a prisoner from a jailer's unnecessary and wanton infliction of pain.  United States v. Miller, 477 F.3d 644, 647 (8th Cir. 2007).  But again, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny . . . . [o]nly the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  Jones v. Shields, 207 F.3d 491, 495 (8th Cir. 2000) (citing Whitley v. Albers, 475 U.S. 312, 319 (1986)).

Similarly, "[w]hen jail officials are alleged to have used excessive force against a prisoner, 'the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Miller, 477 F.3d at 647 (quoting Hudson v. McMillian, 503 U.S. 1, 6–7 (1992)).  A jailer "acts 'maliciously' by undertaking, without just cause or reason, a course of action intended to injure another; in contrast, one acts 'sadistically' by engaging in extreme or excessive cruelty or by delighting in

30

cruelty."   Id. (citing Howard v. Barnett, 21 F.3d 868, 872 (8th Cir. 1994) (citations omitted)).   Factors which inform the court's inquiry in this regard are "the need for the application of physical force; the relationship between the need for physical force and the amount of force applied; and the extent of injury suffered by the inmate."   Jones, 207 F.3d at 495 (citing Hudson, 503 U.S. at 7) (The Hudson Court also considered the threat reasonably perceived by the responsible officials and any efforts made to temper the severity of a forceful response).

Although a significant injury need not be present to prove a violation of a prisoner's Eighth Amendment rights, the Court reasoned that the extent of the injury suffered by the prisoner is one factor that may suggest "whether the use of force could plausibly have been thought necessary in a particular situation. . . . [t]he extent of the injury may also provide some indication of the amount of force applied."   Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (internal quotation marks and citations omitted); see also Jones, 207 F.3d at 495 ("Some actual injury must be shown . . . we consider the extent of the pain inflicted in order to determine whether a constitutional deprivation has occurred.").   "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."   Wilkins, 559 U.S. at 37-38 (internal quotation marks and citations omitted).

31

Mr. Purchase described his verbal abuse as continuing in all directions upon his arrival at the Meade County jail.   Meade County jail staff, including Brengle, determined Mr. Purchase's placement in the restraint chair was necessary for officer safety and to restore order in the Meade County jail in the wake of Mr. Purchase's highly verbally abusive language and shouting.   Brengle described how he and others brought Mr. Purchase water, checked his circulation, attempted to remove Mr. Purchase's handcuffs, and informed Mr. Purchase that he would be released once he settled down.   Mr. Purchase failed to cite any evidence in the record controverting Brengle's account.

Mr. Purchase fell asleep or passed out for approximately three of the seven hours while he was in the restraint chair and does not remember being handcuffed while at the Meade County jail.   Mr. Purchase can point to no physical injuries he sustained as a result of his placement in the restraint chair. Furthermore, Mr. Purchase failed to adduce anything more than broad assertions that Brengle's actions were motivated by a desire to maliciously and sadistically cause harm to him.

The court finds that Brengle's actions were reasonably related to a legitimate government objective, namely ensuring officer safety and restoring discipline in the Meade County jail following Mr. Purchase's arrival.   Therefore, Mr. Purchase's placement in the restraint chair was not excessive under the circumstances and does not constitute punishment in violation of Mr. Purchase's Fourteenth Amendment Due Process rights.   See also Mohamad v.

32

Barone, 494 F. App'x 212, 215 (3d Cir. 2012) (holding that a prisoner's Eighth Amendment rights were not violated when he was placed in a restraint chair, naked, for 24 hours); Blakeney v. Rusk Cnty. Sheriff, 89 F. App'x 897, 899 (5th Cir. 2004) (holding that an unruly pretrial detainee's rights were not violated when the detainee was placed in a restraint chair for 20 hours because it was done to restore order rather than for punitive purposes).   Any injury Mr. Purchase sustained as a result of his placement in the restraint chair was *de minimus* and does not give rise to a constitutional violation.

Under the second test of the qualified immunity analysis, Mr. Purchase failed to demonstrate that Brengle had fair warning that his treatment of Mr. Purchase violated a clearly established constitutional right.   Therefore, Brengle, in his individual capacity, is shielded from any civil liability on Mr. Purchase's Eighth Amendment claim and summary judgment is granted on his behalf. Because Mr. Purchase's Eighth Amendment claim does not implicate Deuter, Hodge or the Sturgis Police Department, they are entitled to summary judgment on this claim.

### ii.    Claims Against Corrections Officer Brengle in His Official Capacity

As analyzed for Mr. Purchase's Fourth Amendment excessive force claim against Deuter and Hodge in their official capacities, "a suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."   Parrish, 594 F.3d at 997 (quoting Elder–Keep, 460 F.3d at

33

986.   Brengle is employed by the Meade County jail.   (Docket 57 at p. 1).
Meade County is not a named party in Mr. Purchase's amended complaint.
(Docket 4 at p. 1).   On this basis alone, Mr. Purchase's claim must be dismissed.
Furthermore, the court notes that the Meade County jail is not a suable entity.
See Owens, 328 F.3d at 1027 ("[C]ounty jails are not legal entities amenable to
suit); De La Garza, 18 F. App'x at 437; Ketchum, 974 F.2d at 82 (holding that a
Police Department was not a "juridical entit[y] suable as such).

In addition to the Meade County not being a named party in this suit and
the Meade County jail not being a suable entity, the court already determined no
constitutional right of Mr. Purchase was violated during his pretrial detention.
Therefore, the court need not further consider any potential Monell claim Mr.
Purchase might raise and Mr. Purchase will not be given leave to file an amended
complaint.   See supra Part 2.B.ii (The court applies the same analysis to suits
brought against Brengle, in his official capacity, which it applied to suits brought
against Deuter and Hodge in their official capacities.).   Brengle's motion for
summary judgment for claims brought against him in his official capacity is
granted.

### D.   Mr. Purchase's State Law Claims

Mr. Purchase's remaining claims against the defendants are based on
South Dakota law:   assault and battery, Stratmeyer v. Engberg, 649 N.W.2d
921, 925-26 (S.D. 2002); intentional infliction of emotional distress, Fix v. First
State Bank of Roscoe, 807 N.W.2d 612, 618 (S.D. 2011); and negligent infliction

34

of emotional distress, <u>Blaha v. Stuard</u>, 640 N.W.2d 85, 90 (S.D. 2002).   The

court's jurisdiction over Mr. Purchase's § 1983 claim is based on 28 U.S.C.

§ 1331.   <u>Pawlowski v. Scherbenske</u>, 891 F. Supp. 2d 1077, 1088 (D.S.D. 2012).

The court's jurisdiction over Mr. Purchase's state law claims rests in 28 U.S.C.

§ 1367.   "Under the supplemental jurisdiction statute, a court may dismiss

state law claims if it has dismissed all claims over which it had original federal

question jurisdiction."   <u>Id.</u> (citing 28 U.S.C. § 1367(c)(3)); <u>see also</u> <u>Ivy v.</u>

<u>Kimbrough</u>, 115 F.3d 550, 552-53 (8th Cir. 1997) ("In most cases, when federal

and state claims are joined and the federal claims are dismissed on a motion for

summary judgment, the pendent state claims are dismissed without prejudice to

avoid '[n]eedless decisions of state law . . . as a matter of comity and to promote

justice between the parties.' ").

   The court finds that it is no longer vested with the supplemental

jurisdiction over Mr. Purchase's state law claims.[12]   Therefore, the court

dismisses Mr. Purchase's assault and battery, intentional infliction of emotional

distress, and negligent infliction of emotional distress claims without prejudice.

The court's dismissal of Mr. Purchase's state law claims tolls the period of

limitations on those claims for 30 days to allow the plaintiff to refile his claims in

state court.   <u>See</u> 28 U.S.C. § 1367(d).

------

   [12]Now lacking jurisdiction over the state law claims, the court cannot
adjudicate the applicability of Mr. Purchase's alleged non-compliance with the
notice requirements of SDCL § 3-21-3.

**ORDER**

Based on the above analysis, it is hereby

ORDERED that Officer Deuter's, Officer Hodge's and the Sturgis Police Department's motion for summary judgment (Docket 47) is granted on the entirety of plaintiff's claims under 42 U.S.C. § 1983.

IT IS FURTHER ORDERED that Corrections Officer Brengle's motion for summary judgment (Docket 54) is granted on the entirety of plaintiff's claims under 42 U.S.C. § 1983.

IT IS FURTHER ORDERED that plaintiff's Fourth Amendment excessive force claim and Eighth Amendment cruel and unusual punishment claim are dismissed with prejudice.

IT IS FURTHER ORDERED that plaintiff's due process claims under the Fourteenth Amendment and false arrest and imprisonment claim under the Fourth Amendment are dismissed without prejudice.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over plaintiff's state law claims.

IT IS FURTHER ORDERED that plaintiff's state law claims which allege assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress claims are dismissed without prejudice.

IT IS FURTHER ORDERED plaintiff's unopposed motion for the court to view the submitted video and audio files (Docket 59) is granted.

36

IT IS FURTHER ORDERED plaintiff's non-dispositive motions or filings (Dockets 15, 16, 17, 22, 23, 30, 31, 32, 33, 34, 37, 42, and 60) are denied and overruled as moot.

Dated March 31, 2015.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE

37